IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DARREN DALE BECKER, Individually and as Executor of the Estate of DONALD DALE BECKER, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 15-675-LPS-CJB |
| BEECHCRAFT CORPORATION., et al., | ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Presently pending before the Court is a motion to dismiss filed by Defendant Continental Motors Inc. ("Continental") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion"). (D.I. 33) Continental argues that Plaintiff Darren Dale Becker, individually and as executor of the estate of his son, Donald Dale Becker ("Plaintiff"), has failed to allege plausible products liability claims against Continental. For the reasons that follow, the Court recommends that Continental's Motion be GRANTED in the manner set out below.

## I. BACKGROUND

### A. Factual Background

Plaintiff filed this action against a multitude of Defendants, including the four now-remaining Defendants: Continental, Beechcraft Corporation ("Beechcraft"), Engine Components, Inc., and Engine Components International (collectively, "Defendants"). (D.I. 1)[1]

---

[1] In an Answer filed on March 7, 2016, Engine Components, Inc. stated that it had been "incorrectly named as also being known as 'Engine Components International'" in the Complaint. (D.I. 17) And it appears that since that time, the parties have been proceeding as if Engine Components International is not a separate party to the case. (See, e.g., D.I. 27; D.I. 44; D.I. 54 at 1 n.1) For the sake of clarity of the record, it would be helpful if the parties jointly addressed the status of this Defendant by way of a stipulation or other submission in the near

The Complaint seeks redress from these Defendants for injuries arising out of an August 3, 2013 aircraft accident in Conway, South Carolina. (*Id.* at ¶¶ 40, 50-52) According to the Complaint, Plaintiff's son was invited to take a ride in a Beechcraft D55 Baron airplane (the "subject airplane"). (*Id.* at ¶ 40) The subject airplane was "powered by two IO 520 (C)(3B) piston engines ... designed, manufactured, overhauled, supplied by, and supported by" Continental. (*Id.* at ¶ 54; *see also id.* at ¶ 121) "During a practice approach, when the pilot attempted to extend the flaps, the [subject airplane] suffered a split flap condition, with one flap extending, and the other actuator failing to extend." (*Id.* at ¶ 46) The split flap condition caused the "aircraft to fly erratically and lose control[.]" (*Id.* at ¶ 47) The pilot was "unable to overpower the split flap condition and was unable to gain sufficient engine power to gain altitude and land safely." (*Id.* at ¶ 48) As a result, the subject airplane "descended and impacted [a] pole," several components separated from the airframe, and the plane caught on fire. (*Id.* at ¶ 50) Plaintiff's son was fatally injured due to this crash. (*Id.* at ¶ 52)

### B. Procedural Background

Plaintiff originally filed a suit for damages arising from the subject accident against H & H Air Service, LLC in the Court of Common Pleas of the State of South Carolina (the "South Carolina Action" or, when referring to the Court, the "South Carolina Court") on April 13, 2015. (D.I. 37 at 1 n.1)[2] Plaintiff joined the Defendants in that case via an Amended Complaint filed on July 30, 2015. (*Id.*)

---

future.

[2] H & H Air Service, LLC is not a party to the instant litigation because it "would not be subject to personal jurisdiction in Delaware." (D.I. 20, ex. 1 at 5)

Thereafter, Plaintiff commenced two savings actions—the instant case on August 3, 2015 and one in a Kansas state court (the "Kansas Action"). (D.I. 20, ex. 1 at 5)[3] With regard to the instant case, on January 29, 2016, Chief Judge Leonard P. Stark referred the case to the Court to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions.

Continental then filed the instant Motion, in lieu of filing an Answer, on October 17, 2016.[4] (D.I. 33) The Motion was fully briefed on November 14, 2016. (D.I. 38)

The Court deferred resolution of the instant Motion for a time, in light of the pendency in the South Carolina Action of certain motions to dismiss based on a lack of personal jurisdiction (and, later, motions for reconsideration of the denial of those motions to dismiss) that had been filed there by certain Defendants. (D.I. 53 at 1) Those motions to dismiss were denied in the South Carolina Action as to Beechcraft and Continental on April 4, 2016, and the motion to dismiss as to Engine Components, Inc. was denied on June 2, 2016. (*Id.*) Each of these Defendants moved the South Carolina Court to reconsider its rulings, (*id.*; D.I. 20 at 1), and by May 19, 2017, that Court had denied all three such motions. (D.I. 48; D.I. 53 at 1) Currently, Continental "is considering renewing its challenge of personal jurisdiction in South Carolina based upon the recent U.S. Supreme Court decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 2017 U.S. LEXIS 3873 (June 19, 2017)." (D.I. 53 at

---

[3] The Kansas Action was apparently filed only against Beechcraft. (D.I. 20, ex. 1 at 5)

[4] By joint stipulation, the instant case has been stayed as to Defendant Beechcraft since February 2016. (D.I. 15) Engine Components, Inc. filed its Answer on March 7, 2016. (D.I. 17) A Scheduling Order was entered in this case on July 19, 2016. (D.I. 25)

1)

## II. LEGAL STANDARD

The sufficiency of pleadings for non-fraud claims is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] court must accept as true all of the allegations contained in a complaint . . . [, but] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id.* at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III. DISCUSSION

Continental moves here for dismissal of three products liability counts against it—Count IV's strict liability claim, Count V's negligence claim, and Count VI's claim for breach of express and implied warranties—on the same two grounds. (D.I. 1) First, it argues that Plaintiff did not allege sufficient facts to support the conclusion that there was a defect in Continental's

4

IO-520 engines found on the subject airplane. (D.I. 34 at 1, 8) And second, it asserts that Plaintiff failed to allege facts to support the proximate cause element of its claims against Continental. (*Id.*) Plaintiff argues in response that he has provided "more than enough facts to raise a plausible claim for relief" and thus has satisfied the pleading requirements of *Twombly* and *Iqbal*. (D.I. 37 at 1)

As jurisdiction in this case is based on diversity of citizenship, (D.I. 1 at ¶ 38), this Court must apply the applicable state's substantive law for all three state law claims asserted against Continental. *See Charlevoix v. Caterpillar, Inc.*, 239 F. Supp. 3d 814, 820 (D. Del. 2017) (citing *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990)). However, neither party affirmatively states which state's law should apply. Further, both parties fail to set out in their briefing the *prima facie* elements of products liability claims based on strict liability (Count IV), negligence (Count V), or breach of express and implied warranties (Count VI).[5] Continental, for its part, simply provides exemplary citations to South Carolina and Delaware state law, and notes that "a choice of law determination is not necessary for purposes of this motion because the elements of defect and causation are required under any potentially relevant law for Plaintiff's product liability claims." (D.I. 34 at 5 n.4) Plaintiff says nothing about the question of which state's law applies. (D.I. 37)

For purposes of resolving this Motion only, the Court will assume *arguendo* that South Carolina law (which recognizes all three claims at issue, and does, in fact, require a showing of a

---

[5] It should be noted that Delaware has expressly rejected the theory of strict products liability. *See Cline v. Prowler Indus. of Md., Inc.*, 418 A.2d 968, 974 (Del. 1980); *see also Barlow v. Delhaize Grp.*, C.A. No. 08-565-MPT, 2009 WL 1391413, at *7 (D. Del. May 15, 2009).

5

defective product and proximate causation for all three claims) applies. *See, e.g., Rife v. Hitachi Const. Mach. Co., Ltd.*, 609 S.E. 2d 565, 569 (S.C. Ct. App. 2005); *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 326, 328 (S.C. Ct. App. 1995). And the Court will go on from there to assess whether Plaintiff has sufficiently pleaded the contested elements of the claims. More specifically, the Court will examine whether Plaintiff's Complaint contains sufficient factual allegations as to how the subject Continental IO-520 engines were defective, and that the defect(s) proximately caused the alleged damages.

**A.   Defect**

A product is defective when it is unreasonably dangerous to the consumer. *Bragg*, 462 S.E.2d at 326. A product can be unreasonably dangerous due to a design defect, a manufacturing defect, or by a party's failure to warn of the product's dangerous propensities. *See Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010); *Rife*, 609 S.E.2d at 570. A design defect is one where an entire product line is designed improperly, while a manufacturing defect is one where the product line is properly designed but a particular item was manufactured incorrectly. *Watson*, 699 S.E.2d at 174. A failure to warn theory is found in cases where the product was not reasonably safe because adequate warnings or instructions were not provided. *See Anderson v. Green Bull, Inc.*, 471 S.E.2d 708, 711 (S.C. Ct. App. 1996).[6]

Continental does not appear to take serious issue with allegations regarding the type of defect the IO-520 engines are alleged to have had (e.g., a design defect vs. a manufacturing

---

[6]     Plaintiff makes allegations concerning Continental's provision of inadequate warnings throughout his Complaint. (*See, e.g.*, D.I. 1 at ¶¶ 125(b), 133(h), 149(a)) The adequacy of Plaintiff's failure to warn allegations are only briefly mentioned in Continental's reply brief, (D.I. 38 at 3), and so the Court need not address their sufficiency at this time.

6

defect);[7] rather, its assertion seems mainly to be that Plaintiff has failed to adequately identify "the nature of the defect" itself. (D.I. 34 at 5) Continental argues that Plaintiff's "allegations do nothing to describe, even in general terms, the nature of [that] alleged defect." (*Id.* at 7).

The Court disagrees. Although it is true that the paragraphs of the individual counts at issue here (Counts IV, V and VI) are a bit vague when discussing the defect(s) in question, (*see, e.g.*, D.I. 1 at ¶ 125; *see also* D.I. 34 at 3 & n.3), there is a portion of the Complaint where Plaintiff *does* set out certain defects relating to Continental's engines with specificity. In a section of the Complaint titled "Background of the IO-520[,]" Plaintiff notes that if Continental "learned that there was a defect in [its IO-520] engine that could cause an engine failure, they were obligated to report defects and the nature of such defects, and to redesign to rectify such defects." (D.I. 1 at ¶ 80) Then, in the next paragraph, Plaintiff alleges that, "[f]or a long time prior to this accident," Continental was "aware of numerous problems with [its IO-520] engine model and its cylinders, valves, and valve guides, and numerous accidents and incidents, malfunctions and defects related thereto." (*Id.* at ¶ 81) And Plaintiff next goes on to more

---

[7] Products liability claims may have different pleading requirements depending on whether they implicate alleged design or manufacturing defects. *See, e.g.*, *Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1284904, at *4 (D. Del. March 21, 2014) (noting that a design defect claim under Mississippi law requires allegations as to a "feasible design alternative that would have to a reasonable probability prevented the harm"); *Fontalvo v. Sikorsky Aircraft Corp.*, Civil Action No. 13-cv-0331-GPC-KSC, 2013 WL 4401437, at *3 (S.D. Cal. Aug. 15, 2013) (stating that an allegation as to a manufacturing defect "must state with some particularity how the defendants' product either deviated from [the manufacturer's] intended result or design or how the product deviated from other identical products"); *see also Branham v. Ford Motor Co.*, 701 S.E.2d 5, 16 (S.C. 2010); *Mickle v. Blackmon*, 166 S.E.2d 173, 187-88 (S.C. 1969). Because Continental's assertion as to how the defect-related allegations are insufficient does not really focus on any such additional pleading requirements—and instead is mainly focused on the failure to sufficiently articulate the very nature of the defect itself—the Court need not further consider these additional requirements here.

specifically explain that Continental was "aware that the IO-520 series engines had repeated failures involving premature wear of the cylinder assemblies, valve assemblies, bearings, cracking, and other malfunctions." (*Id.* at ¶ 82) It is clear that these "failures" are, in fact, the defects that Plaintiff is pointing to in the Complaint as to the Continental engines.[8]

Continental, in arguing that Plaintiff's allegations do not clear the bar, cites for support to a few "aviation-related cases" involving insufficiently pleaded products liability claims. (D.I. 38 at 6; *see also* D.I. 34 at 5-6) Each of the cases is distinguishable, however. In each, the allegations regarding the defect at issue were clearly less robust than what we have here.

For example, in *Am. Guar. & Liab. Ins. Co. v. Cirrus Design Corp.*, No. 09 Cv. 8357(BSJ)(HBP), 2010 WL 5480775 (S.D.N.Y. Dec. 30, 2010) ("*American Guarantee*")—the principal case relied upon by Continental—the United States District Court for the Southern District of New York dismissed claims for negligence and strict products liability arising out of a plane crash, because plaintiff failed to "specify the actual defective component or the nature of the defect." *Am. Guar. & Liab. Ins. Co.*, 2010 WL 5480775, at *2. In the operative complaint, the plaintiff had alleged that the pilots of the plane at issue were making a routine turn when they lost control of the plane. *Id.* It was further alleged that "the crash debris and witnesses on the ground who observed the crash provid[ed] evidence that there was a failure of the flight control systems" and that a "subsequent investigation revealed that [the specific] model [of] plane had 'certain defects' in its steering controls that made the airplane unable to be controlled[.]" *Id.* The district court noted that the complaint's reference to "certain defects" could "encompass any

---

[8] Although these paragraphs are found in the "Statement of the Facts" section of the Complaint, they are incorporated by reference into each of the three counts at issue. (D.I. 1 at ¶¶ 118, 130, 136)

8

one of hundreds, if not thousands, of component parts of the systems designed to operate the rudder and ailerons of the aircraft." *Id.* Because of the lack of specificity about the relevant defects, the court was unable to draw a reasonable inference that the defendant was liable and so dismissed the complaint. *Id.*

Similarly, in *Mullen v. Bell Helicopter Textron, Inc.*, CAUSE NO. 1:15CV158-LG-RHW, 2015 WL 11120331 (S.D. Miss. Aug. 17, 2015)—another case discussed in detail by Continental—the United States District Court for the Southern District of Mississippi dismissed the plaintiff's products liability action arising out of a helicopter crash. *Mullen*, 2015 WL 11120331, at *1-2. The defendant had argued that the plaintiff, *inter alia*, had not sufficiently identified any defect in the design, manufacture or warnings of the helicopter. *Id.* at *2. In his complaint, the plaintiff had alleged simply that "the helicopter was in flight; the horn sounded; the pilot said 'We lost power,' and the helicopter crashed[.]" *Id.* Beyond this, the plaintiff conceded that he had not articulated the design defect at issue; he argued instead that he simply could not have done so, because "the crash investigation [wa]s not complete[.]" *Id.* The *Mullen* Court concluded that the plaintiff was required to state "what was defective about the design of the helicopter, how the helicopter deviated from the manufacturer's specifications, and/or the nature of the location of any warnings and how [plaintiff] believes they were inadequate"; the fact that plaintiff argued that it was too early for him to do so simply demonstrated to the Court that "he has filed this lawsuit too soon." *Id.*

In these cases, as well as the other cases cited by Continental,[9] the failure of pleading was

---

[9] *See Cheramie v. Panther Helicopters, Inc.*, Civil Action No. 14-1597, 2015 WL 693221, at *1, *4 (E.D. La. Feb. 18, 2015) (dismissing a products liability claim because the plaintiff alleged only that the engine at issue was "defective[,]" but made no further allegations as

9

clear, as the complaint said almost nothing about what was the particular defect at issue. The allegations in *American Guarantee* were the most substantial of the group, as at least there, the plaintiff identified the general portion of the airplane—the steering controls—that was said to contain the defects, though he said nothing further as to what the actual defects were. Here, in contrast, Plaintiff has identified not only the particular portion of the IO-520 engines that have the defects at issue (the cylinder assemblies, valve assemblies and bearings) but has stated what those defects are (that, *inter alia*, these components experienced "premature wear" and "cracking"). (D.I. 1 at ¶ 82); *cf. Marks v. Westwind Helicopters, Inc.*, CIVIL NO. 6:15-1735, 2016 WL 5724300, at *10-11 (W.D. La. Jan. 20, 2016) (finding allegations sufficient to make out a plausible claim for defective design, where the allegations were that the "engine prematurely developed cracks in its Outer Combustion Case as a result of a defect in design or manufacture" and where these defects were alleged to have caused the helicopter to lose power); *Winslow v. W.L. Gore & Assoc., Inc.*, Civil Action No. 10-116, 2011 WL 866184, at *2 (W.D. La. Jan. 21, 2011) (finding that the plaintiff's allegations "specifically identified the 'nature of the alleged defect'" at issue, where the product was a specific mesh device manufactured by the defendant, and where the plaintiff pleaded that "deterioration of the mesh device" after six years in the plaintiff's body amounted to the defect in question).

Therefore, construing the Complaint in the light most favorable to the Plaintiff, Plaintiff

---

to when or how the engine became defective); *Hicks*, 2014 WL 1284904, at *4 (dismissing a plaintiff's claims arising under Mississippi's Products Liability Act because the complaint "fail[ed] to explain—even in the simplest terms—what the defect is"); *Fontalvo*, 2013 WL 4401437, at *2-5 (dismissing a complaint asserting a strict products liability claim where the complaint mentioned various different components of a helicopter at issue, but never clearly stated which of those many components was actually the defective component).

has sufficiently identified that nature of the defects in the relevant Continental IO-520 engines.

## B.     Proximate Cause

The definition of and requirements for proximate cause vary by state. *See McKnight v. South Carolina Dep't of Corr.*, 684 S.E.2d 566, 569 (S.C. Ct. App. 2009) (citations omitted) (explaining that, under South Carolina law, establishing proximate cause requires proof of both causation in fact ("but for" causation) and legal cause (foreseeability)); *see also Money v. Manville Corp. Asbestos Disease Comp. Trust Fund*, 596 A.2d 1372, 1375 (Del. 1991) (citation omitted) ("[E]stablishing proximate cause requires a plaintiff to prove that but for the tortious conduct of the defendant, the injury which the plaintiff has suffered would not have occurred."); *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991) (noting that some jurisdictions have adopted the "substantial factor" rule instead of the "but for" rule for establishing proximate cause). The Court concludes that pursuant to South Carolina law on proximate causation (indeed, under Delaware law too), Plaintiff has failed to sufficiently allege that the defects associated with Continental's IO-520 engines were the proximate cause of the asserted damages.

Relevant to the proximate cause analysis, Plaintiff alleges that a split flap condition in the subject aircraft during a practice approach "caused the aircraft to fly erratically and lose control[.]" (D.I. 1 at ¶¶ 46-47) According to the Complaint, the "pilot was unable to overpower the split flap condition and was unable to gain sufficient engine power to gain altitude and land safely" because "[t]he [IO-520] engines were not generating sufficient thrust to assist the pilot in his recovery." (*Id.* at ¶¶ 48-49) And, as noted above, Plaintiff also states that for a long time prior to the accident, Continental was "aware of numerous problems with this engine model[,]" particularly the above-referenced problems "involving premature wear of the cylinder

11

assemblies, valve assemblies, bearings, cracking, and other malfunctions." (*Id.* at ¶¶ 81-82)

But what is lacking in Plaintiff's Complaint, as Continental notes, is some factual articulation or explanation as to *whether and how* the identified defects in Continental's engine are said to be "responsible for the lack of power or crash." (D.I. 34 at 7; *see also* D.I. 38 at 3) At no point in his Complaint does Plaintiff clearly allege, for example, that the inability to "overpower the split flap condition" or the inability "to gain sufficient engine power to gain altitude and land safely" due to a lack of sufficient thrust *was the result* of the previously-identified IO-520 engine defects. (*See* D.I. 38 at 3) Nor does Plaintiff clearly assert facts indicating that such defects *can actually cause* this type of problem. (*Id.*) It is possible that, as Continental asserts, "if the engines were not producing sufficient thrust as Plaintiff alleges, it could have been for reasons having nothing to do with a defect in the engine – *e.g.*, a lack of fuel." (D.I. 34 at 7-8; *see also* D.I. 38 at 4)

The Court thus agrees with Continental that Plaintiff's allegations regarding proximate cause are insufficient to meet Rule 8(a)'s requirements. Accordingly, the Court recommends that Counts IV, V, and VI be dismissed on this ground.

### C. Nature of the Dismissal

Generally, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236. The Court cannot say at this stage that allowing the opportunity to amend will necessarily be "inequitable or futile." In its answering brief, (D.I. 37 at 1), Plaintiff suggested that it *does* intend to assert that the above-identified defects in the IO-520 engines *in fact* caused the engines of the subject aircraft to fail to produce sufficient power to allow it to adjust to the split flap

condition. Plaintiff may be able to put forward factual allegations supporting this theory in an amended complaint, and should be given the opportunity to do so.

Accordingly, the Court recommends dismissal without prejudice for Counts IV, V and VI. It also recommends that if the District Court affirms this Court's recommendation of dismissal, that the District Court thereafter permit Plaintiff fourteen (14) days to file an amended complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court recommends that the District Court: (1) GRANT the Motion to Dismiss without prejudice as to Counts IV, V, and VI of Plaintiff's Complaint; and (2) if the District Court affirms this Court's recommendation of dismissal, that the District Court thereafter permit Plaintiff fourteen (14) days to file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: September 21, 2017

/s/ Christopher J. Burke
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE